UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re Application of UBS AG For An Order                    :
Pursuant To 28 U.S.C. § 1782 To Conduct                     :  13MISC 0199
Discovery For Use In Foreign Proceedings                    :
                                                            :
------------------------------------------------------------x



**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
OF UBS AG FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
<u>TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS</u>**

SPEARS & IMES LLP
51 Madison Avenue
New York, New York  10010
Tel:  (212) 213-6996
Fax: (212) 213-0849

*Attorneys for UBS AG*

# TABLE OF CONTENTS

                                                                                                    **Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................... 2

    A. The Mistaken Payment ...................................................................................................... 2

    B. The Proceeding in London ................................................................................................. 5

    C. The Proceeding in Reykjavik ............................................................................................. 8

ARGUMENT ................................................................................................................................ 10

    A. UBS's Application Satisfies The Statutory Requirements of Section 1782 .................... 11

    B. UBS's Application Satisfies The *Intel* Discretionary Factors ......................................... 12

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

## **Cases**

*Brandi-Dorhn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012)..................................................................................................10

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995)...........................................................................................12, 13

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
No. CIV.M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ...................13, 14

*In re Application of Guy*,
No. M 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) .........................................13

*In re Application of Hill*, No. M19-117(RJH),
No. M19-117 (RJH), 2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007)..............................13

*Intel Corporation v. Advanced Micro Devices*,
542 U.S. 241 (2004)................................................................................................11, 12, 13

## **Statutes**

28 U.S.C. § 1782..................................................................................................................1, 10

Title 28 United States Code section 1782 authorizes United States District Courts to order discovery in the United States for use in foreign proceedings. JPMorgan Chase Bank, N.A. ("JPMC"), a national banking association with its principal place of business at 270 Park Avenue, New York, New York ("Spears Decl. ¶¶ 2, 19, Ex. P),[1] is at the center of a dispute over an October 2008 payment of $65 million by UBS AG ("UBS") that is currently the subject of legal proceedings in London, England and Reykjavik, Iceland arising out of the 2008 collapse of Icelandic bank Kaupthing hf. ("Khf") and its English subsidiary Kaupthing Singer & Friedlander Limited ("KSF") (Spears Decl. ¶¶ 3, 6, Ex C at ¶¶ 6-8). UBS is a party to those proceedings and JPMC is not. UBS submits this memorandum of law in support of its application under section 1782 for an order authorizing it to obtain discovery from JPMC for use in the London and Reykjavik proceedings.

## INTRODUCTION

On October 3, 2008, UBS transferred $65 million to the wrong account at JPMC. UBS intended to direct the payment to the JPMC account of KSF, but UBS unintentionally transferred that amount to the account at JPMC of Khf, KSF's parent. The mistake was discovered almost immediately, and after receiving express instructions from UBS, KSF, and Khf to redirect the $65 million from Khf's account to KSF's account, JPMC confirmed that transfer separately to UBS and to Khf in writing on the morning of October 9, 2008. However, later that same morning, JPMC received notice that Khf had entered into administrative proceedings in Iceland for protection from creditors, and JPMC presumably cancelled, reversed, or did not complete the transfer from Khf to KSF, with the result that the $65 million remained in Khf's account rather than being credited to KSF's account.

---

[1] The Declaration Of David Spears In Support Of Application Of UBS AG For An Order Pursuant To 28 U.S.C. § 1782 To Conduct Discovery For Use In Foreign Proceedings, dated June 10, 2013, is referred to herein as "Spears Decl. ¶ __."

JPMC did not inform UBS that it had acted contrary to the confirmation it had sent to UBS, and UBS did not learn that the $65 million transfer had not taken place as confirmed by JPMC until more than three years later. Administrators for KSF (which also sought protection from creditors in October 2008) now assert that UBS owes KSF $65 million because JPMC never completed the transfer to KSF. KSF has filed an action against UBS in London for payment of the $65 million, thus subjecting UBS to the risk that it will have to pay the $65 million a second time. Subsequently, UBS filed a claim with the administrators for Khf in Reykjavik seeking the return of the $65 million misdirected to Khf, and UBS now has a formal claim as to the $65 million before the District Court in Reykjavik.

Based on these events and others, JPMC – and only JPMC – is in possession of information that is critical to the resolution of foreign proceedings in England and Iceland in which UBS is a party. JPMC is therefore a proper subject of discovery pursuant to UBS's section 1782 application seeking the Court's authorization of a subpoena for documents addressed to JPMC under Rule 45(a) of the Federal Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Mistaken Payment

On September 1, 2008, UBS entered into a foreign exchange trade with KSF under the 1992 ISDA Master Agreement between UBS and KSF dated August 26, 2004 (the "Master Agreement"). (Spears Decl. ¶ 5, Ex. A at ¶¶ 1, 2.) The terms of the foreign exchange trade were that UBS would pay KSF $100 million in exchange for £55,614,723.44 from KSF. (*Id.* at ¶ 1.) Payments were to be exchanged on October 3, 2008. (*Id.*)

Concerned about the solvency of Icelandic banks, UBS decided to pay the $100 million in two installments, one of $65 million on October 3, 2008, and a second of $35 million to be

paid once UBS had received a payment from KSF pursuant to another foreign exchange transaction between the two parties. (Spears Decl. ¶ 6, Ex. B at ¶ 3.1.1-3.1.2.) On Friday, October 3, 2008, UBS attempted to make the payment of $65 million to KSF, but UBS operators entered the payment instructions incorrectly, transferring the $65 million to the JPMC account of Khf, KSF's parent, rather than to KSF's account at JPMC (the "Mistaken Payment").[2] (*Id.* at ¶ 3.1.4.)

KSF realized that same day that UBS had sent payment to the wrong JPMC account, and KSF immediately contacted JPMC regarding the erroneous transfer. (Spears Decl. ¶ 6, Ex. B at ¶ 4.1.) JPMC told KSF that it could not do anything without a SWIFT instruction requesting a transfer of the funds.[3] (*Id.*) The following Monday, October 6, KSF alerted Khf to the Mistaken Payment and requested that it be transferred from Khf's JPMC account to KSF's JPMC account. (*Id.* at ¶¶ 4.3.1, 4.3.2.) Khf responded that it could not transfer the funds to KSF until it received instructions from UBS to do so. (*Id.* at ¶ 4.3.3.) Khf also contacted JPMC requesting information on how to proceed. (Spears Decl. ¶ 8, Ex. D.) The following day, October 7, JPMC sent a SWIFT message to UBS advising it that there was a problem with the October 3 payment of $65 million to Khf. (Spears Decl. ¶ 9, Ex. E.) UBS investigated the problem internally and determined that it had directed the payment to the wrong account. (Spears Decl. ¶ 6, Ex. B at ¶ 4.3.6.)

---

[2] On October 7, 2008, UBS correctly paid the remaining $35 million to KSF's account at JPMC after confirming that KSF had paid the funds due pursuant to the other foreign exchange transaction between the parties. (Spears Decl. ¶ 6, Ex. B at ¶ 3.1.5.)

[3] The Society for Worldwide Interbank Financial Telecommunication ("SWIFT") is a messaging service specializing in the transmission of financial messages, called "SWIFT messages," between banks and other financial institutions.

3

At 9:06 a.m.[4] on the morning of October 8, 2008, UBS instructed JPMC to transfer the Mistaken Payment from Khf's account to KSF's account. (Spears Decl. ¶ 10, Ex. F.) At 9:26 a.m., JPMC responded that it was "presently contacting Kaupthing Bank [Khf] for debit authority per [UBS's] request to amend the payment order." (Spears Decl. ¶ 11, Ex. G.) JPMC sent a SWIFT message to Khf two minutes later, at 9:28 a.m., asking for authorization to transfer the $65 million from Khf's account to KSF's account. (Spears Decl. ¶ 12, Ex. H.) Khf responded later on the afternoon of October 8, at 2:18 p.m., "authoriz[ing] [JPMC] to debit [Khf's] account for USD 65.000.000.00 that was credited to [Khf's] account in error." (Spears Decl. ¶ 13, Ex. I.)

At 6:30 a.m. the next day, October 9, 2008, JPMC sent a SWIFT message to UBS stating: "We confirm amending the above payment today in accordance with your instructions." (Spears Decl. ¶ 14, Ex. J.) JPMC also sent a SWIFT message to Khf at 6:30 a.m. stating: "Debiting your account . . . today 65,000,000.00/USD VALUE 08-OCT-08 in same day funds in reversal of our credit entry dated 03-OCT-08 . . . as the remitter requests cancellation." (Spears Decl. ¶ 15, Ex. K.)

That same morning of October 9, 2008, however, JPMC received notice from Khf that the Icelandic financial services regulator, the FME, had taken over Khf and replaced its board with a "Resolution Committee" to prepare Khf for reorganization or bankruptcy. (Spears Decl. ¶ 6, Ex. B at ¶ 5.3.) At 7:22 a.m. (11:22 a.m. in Iceland), Khf sent a SWIFT message to JPMC, stating that the FME "ordered [the] transfer of all credit balance on [Khf's] account held with [JPMC]," and requesting that JPMC "put all pending payments out of our account on hold and send all balance" to an account in the Icelandic Central Bank. (Spears Decl. ¶ 16, Ex. L.)

---

[4] All times used herein are New York time, unless otherwise indicated.

4

It appears that JPMC did not complete the transfer of $65 million from Khf to KSF that it had confirmed to UBS and Khf in its respective SWIFT messages to them at 6:30 a.m. on October 9. However, JPMC did not inform UBS at that time – or at any time thereafter – that the transfer JPMC had "confirm[ed]" had apparently not been completed. In fact, UBS heard nothing further from JPMC, KSF, Khf, or anyone else concerning the Mistaken Payment until more than three years later. (Spears Decl. ¶ 6, Ex. B at ¶ 2.12.)

In 2009, however, when UBS still had no knowledge that JPMC had apparently not completed the transfer of the Mistaken Payment to KSF, KSF engaged in a course of dealing with UBS and Khf that suggests that KSF held Khf – and not UBS – responsible for the failed transfer of the $65 million. At that time, KSF and UBS entered into negotiations over amounts UBS owed to KSF in connection with the closing out of the Master Agreement between them (the umbrella agreement that gave rise to the Mistaken Payment) pursuant to KSF's entry into administration. (Spears Decl. ¶ 7, Ex. C at ¶ 11.) In those negotiations, KSF never raised with UBS the issue of the Mistaken Payment. (*Id.* at ¶ 13.) UBS and KSF reached the position that UBS's debt to KSF under the Master Agreement totaled $5,199,194.05; and on October 6, 2009, UBS made and KSF accepted payment of that amount. (*Id.* at ¶¶ 12-13.) A few weeks later KSF submitted a claim against Khf in Iceland for the $65 million Mistaken Payment. (Spears Decl. ¶ 5, Ex. B at 5.5.)

### B. The Proceeding In London

On November 27, 2012, KSF brought a claim against UBS in the Queen's Bench Division of the English High Court of Justice, alleging that UBS owes KSF $65 million plus interest and costs. (Spears Decl. ¶ 5, Ex. A.) UBS filed its Defence on January 8, 2013 (Spears Decl. ¶ 6, Ex. B), and KSF filed its Reply on February 8, 2013 (Spears Decl. ¶ 21, Ex. P). The

5

parties subsequently filed an Agreed Case Summary & List Of Issues ("Agreed Case Summary"). (Spears Decl. ¶ 7, Ex. C.) Through these and other documents, KSF and UBS have detailed their respective positions and arguments in that proceeding and identified issues to be addressed.

First, UBS has argued that it entered into an agreement with KSF and Khf that the Mistaken Payment would be treated as satisfying UBS's $65 million obligation to KSF; and KSF has argued in return that it "would have been content to treat the receipt by it from Khf" of payment of the $65 million as discharging UBS's obligation to KSF, but only "if the payment by Khf was actually made." (Spears Decl. ¶ 21, Ex. 9 at ¶ 3.c) Thus it is essential that UBS receive documents from JPMC evidencing all communications between or among JPMC and any of UBS, KSF, and Khf, or internally at JPMC, concerning the Mistaken Payment in order to determine what agreements, if any, existed as to the transfer of, or legal right to, the Mistaken Payment.

Similarly, UBS seeks all records of JPMC concerning JPMC's processing of the Mistaken Payment from the time when it was credited to Khf's account on October 3, 2008 through the time when Khf's administrators removed all of the funds in that account on November 19, 2008, including all investigative or audit reports. UBS needs these documents in order to learn whether at any time JPMC took any action to credit the $65 million to the account of KSF. UBS also seeks from JPMC all documents that address the relationship between the issuance of a SWIFT by JPMC to a third party confirming that a requested or authorized transfer has taken place and any corresponding entry in JPMC's systems or records of that transfer.

Second, in the Agreed Case Summary, KSF and UBS agree that in March 2009 – when UBS was unaware that JPMC had apparently not completed the transfer of the Mistaken

Payment to KSF on October 9, 2008 – UBS calculated the total amount it still owed to KSF under the Master Agreement between them as $5,199,194.05 and so informed KSF. (Spears Decl. ¶ 7, Ex. C at ¶¶ 11-12.) In October 2009, UBS paid that amount to KSF and KSF accepted that amount without making any mention to UBS of an additional $65 million owed by UBS to KSF. (*Id.* at ¶ 13.) And according to the Agreed Case Summary, KSF submitted a claim in Khf's winding-up in Reykjavik for the $65 million Mistaken Payment in November 2009, without involving UBS. (*Id.* at ¶ 14.) Based on these events, UBS argues that "KSF is now precluded from enforcing any payment obligations" against UBS relating to the $65 million because (1) "KSF elected to pursue Khf and not UBS or otherwise waived any claim against UBS," and (2) "KSF is estopped . . . from asserting its claim against UBS." (*Id.* at ¶ 18.) KSF's administrators argue in response that it took them "a long time to investigate matters," and that they first "became aware [] in March 2012 [] of any potential claim against UBS." (*Id.* at ¶ 2.)

Thus it is critically important that UBS receive all documents reflecting communications between JPMC and KSF regarding the Mistaken Payment. UBS needs these documents in order to investigate whether KSF was aware it had not received a transfer of the Mistaken Payment from Khf as of the time in October 2009 when KSF accepted UBS's payment of approximately $5 million in satisfaction of all of UBS's outstanding obligations to KSF under the Master Agreement. This evidence will support UBS's defence that by not raising the Mistaken Payment in connection with this approximately $5 million payment by UBS, and by shortly thereafter seeking the $65 million from the estate of Khf, KSF knowingly made an election to pursue Khf rather than UBS for the $65 million.

### C.     The Proceeding In Reykjavik

On October 2, 2012, UBS also lodged a claim against the Khf estate in Iceland for the $65 million plus interest. (Spears Decl. ¶ 17, Ex. M.) UBS pursued two theories of recovery against Khf with its administrators. First, UBS lodged its claim under Article 109 of the Icelandic Bankruptcy Act no. 21/1991, arguing that UBS is the owner of the $65 million Mistaken Payment, that Khf has no ownership-title to the Mistaken Payment, and that the Mistaken Payment was kept separate in Khf's accounts. (*Id.* at 2-3.) Second, UBS lodged its claim under Article 110 of the Bankruptcy Act, arguing that the Khf estate itself caused UBS damage when it did not return the Mistaken Payment to UBS, transfer it to KSF immediately upon realizing that it had no ownership-title to those funds, or notify UBS that the transfer to KSF was cancelled, reversed, or not completed.[5] (*Id.*) Acting through its administrators, the Khf estate rejected UBS's claim on October 23, 2012. (Spears Decl. ¶ 18, Ex. O.) Subsequently, on April 23, 2013, UBS's claim was referred to the Reykjavik District Court for formal proceedings. (Spears Decl. ¶ 19.) An initial court hearing took place on May 29, 2013, and the deadline for UBS's submission to the Court identifying its core arguments is June 25, 2013. (*Id.*)

As to UBS's Article 109 claim, it is key for UBS to have documents showing whether the $65 million transfer that JPMC confirmed to UBS and Khf in SWIFTs on the morning of October 9, 2008 was entered in the records of JPMC at or around the time those SWIFTs were sent to UBS and Khf. UBS needs such information in order to determine whether the Mistaken Payment was, in effect, segregated from Khf's other funds, in that JPMC credited the $65

---

[5] Significantly, by failing to notify UBS that the $65 million was not transferred to KSF, the Khf estate deprived UBS of the opportunity to lodge a general claim against the estate within the estate's claim registration window, which closed on December 30, 2009. Such a claim could have enabled UBS to receive at least a partial recovery from the Khf estate of an estimated 25 to 30 percent of the $65 million.

8

million, even if only temporarily, to the account of KSF. Further, if the Mistaken Payment *was* credited to KSF's account and that credit entry subsequently reversed after JPMC learned that the Resolution Committee had assumed control of Khf's estate, that will also be important because such a reversal would mean that the $65 million was received *by the estate itself* (and not the going concern). UBS therefore seeks all documents at JPMC concerning JPMC's processing of the Mistaken Payment from October 3, 2008 (when the Mistaken Payment was first received by Khf) through November 19, 2008 (when Khf's administrators caused all of the funds in Khf's account at JPMC to be transferred out).

As to UBS's Article 110 claim, UBS seeks documents concerning JPMC's practices and procedures with respect to the transfer of funds generally, as well as documents concerning all transfers out of Khf's account at JPMC at any time from October 3, 2008 through November 30, 2008. It is important to know whether Khf made payments to some creditors but not others during this period in apparent breach of general principles of creditor equality under Icelandic bankruptcy law. Further, in order to determine whether payments to one or more third parties made it impossible for Khf to transfer the Mistaken Payment to KSF at or after the time on October 8, 2008, when JPMC had received full authorization from UBS and Khf to make that transfer to KSF, UBS seeks records from JPMC reflecting any overdraft privileges Khf had with regard to its account at JPMC.

UBS also seeks all documents evidencing communications received by JPMC prior to October 9, 2008 from any third party relating to any future or present action putting Khf in administration for insolvency, and all documents evidencing internal communications at JPMC regarding any such communication from a third party. As Article 110 applies to damage caused by the action or inaction of the estate itself, it is important to understand the circumstances

surrounding the appointment of the Resolution Committee, including the precise timing of appointment and when JPMC first learned of Khf's possible insolvency.

In addition, UBS seeks documents showing the nature of the relationship between JPMC and Khf and between JPMC and KSF, including any agency or service agreements concluded between JPMC and either Khf or KSF. Such documents are relevant to whether JPMC's actions (or inaction) are attributable to Khf's estate (or KSF's estate), including (1) whether JPMC's SWIFT confirmation of the transfer on the morning of October 9, 2008 can be considered equivalent to a confirmation from Khf's estate itself, (2) whether JPMC's failure to notify UBS that the $65 million was not transferred to KSF after October 9, 2008 is attributable to Khf's estate (or KSF's estate), and (3) whether the SWIFT message requesting that all pending payments be put on hold constituted a binding order from Khf's estate to JPMC or a non-binding request.

Whether JPMC debited Khf's account for the $65 million on the morning of October 9, 2008, only to later reverse that entry, is also important under Article 110, because if that happened, the estate itself received the funds and kept them in bad faith, without notifying UBS. *See* discussion at pages 8-9 above.

## ARGUMENT

Section 1782 authorizes "[a] district court of the district in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." The statute's twin goals are "to provide equitable and efficacious discovery procedures in United States courts for the benefit of tribunals and litigants involved in litigation with international aspects," and "to encourage foreign countries by example to provide similar means of assistance to our courts." *Brandi-*

10

*Dorhn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (internal quotation marks and citations omitted). In pursuit of these goals, courts have given Section 1782 "increasingly broad applicability." *Id.*

### A. UBS's Application Satisfies The Statutory Requirements Of Section 1782

To obtain discovery under section 1782, the applicant must first meet the statutory requirements that (1) the person from whom the discovery is sought either "resides" or is "found" in this District; (2) the discovery is "for use in a proceeding" before a "foreign tribunal"; and (3) the applicant qualifies as an "interested person." *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 246-47 (2004). The application filed by UBS meets all of these requirements.

First, JPMC has its principal place of business at 270 Park Avenue, New York, New York, thus satisfying the requirement that the entity from which discovery is sought "reside" in or be "found" in this District. (Spears Decl. ¶ 20, Ex. P.)

Second, the discovery is "for use in two proceedings" before two "foreign tribunals": KSF has made a formal claim against UBS in the Queen's Bench Division of the English High Court of Justice, and UBS has lodged a claim with the Khf estate in Iceland, which the Khf estate has rejected and referred to the Reykjavik District Court in Iceland.

Third, as a defendant named in the English proceeding and a claimant in the Icelandic proceeding, UBS qualifies as an "interested person" within the meaning of section 1782. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."). Thus, all of section 1782's threshold requirements are easily satisfied here.

### B.   UBS's Application Satisfies The *Intel* Discretionary Factors

Once the statutory requirements of section 1782 are met, the District Court is called upon to exercise its discretion liberally in favor of granting discovery. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) (stating that policy underlying section 1782 generally obliges District Courts to assist the applicant in the requested discovery).

In *Intel*, the Supreme Court enumerated additional factors that may inform the District Court's discretion when passing upon a section 1782 application. A court need not consider all of these factors in making its decision on the application, but may use them as guides in its decision-making. 542 U.S. at 264-66. The discretionary factors that may be considered include: (1) whether the person from whom the discovery is being sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding and the receptivity of the foreign tribunal to United States federal court judicial assistance; (3) whether the request is an attempt to circumvent foreign proof gathering limitations; and (4) whether the discovery sought is unduly burdensome. *Id.* Consideration of the *Intel* discretionary factors counsels in favor of granting UBS's application for assistance in discovery of information critical to the English and Icelandic proceedings.

First, JPMC is not a party to either the English or the Icelandic proceedings. This fact favors discovery given that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

Second, there is no indication that the English or Icelandic courts would reject the discovery UBS seeks from JPM. The Second Circuit has made clear that absent specific direction from a foreign tribunal that it does not want to receive the discovery sought, section

12

1782 discovery should generally be granted. *See Euromepa S.A.*, 51 F.3d at 1100-02. Here, there is no direction from either the English court or the Icelandic court that it does not want to receive the requested documents. Moreover, section 1782 has previously been applied to authorize discovery for matters pending in English courts. *See, e.g., In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) (rejecting the notion that English courts would disfavor relief under section 1782). Indeed, English courts have themselves ruled that nondiscoverability under English law need not stand in the way of a litigant in English proceedings seeking assistance in the United States under section 1782. *See Intel*, 542 U.S. at 261-62.

Third, UBS's application is not an attempt to circumvent foreign proof-gathering restrictions. This factor does not turn on whether the evidence sought could be discovered in the foreign tribunal. *Intel*, 542 U.S. at 253 ("We now hold that § 1782(a) does not impose . . . a [foreign-discoverability] requirement."). Rather, the question of "circumvention" is focused on whether the discovery is being sought in bad faith. *See In re Application of Hill*, No. M19-117(RJH), 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [applicant's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor."). There is no evidence of bad faith here. Given JPMC's residence in this District and its integral role in the transaction at issue in the foreign proceedings, there is ample reason for UBS to use section 1782 to request discovery from JPMC. *Cf. In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. CIV.M19-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006) (finding section 1782 request did not circumvent foreign discovery process because, if the German court "opposes United States assistance, that court may simply choose to exclude the discovered material from evidence").

Fourth, the discovery sought is neither unduly intrusive nor burdensome. UBS's application for discovery from JPMC is "sufficiently tailored to the litigation issues for which production is sought." *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *8. By its application, UBS seeks information from JPMC regarding certain transactions in the accounts of KSF and Khf from October 3, 2008 to November 19, 2008, and limited communications between JPMC and the administrators for KSF over a longer period. UBS's requests for documents are therefore appropriately narrowed to the relevant subjects and time period.

## CONCLUSION

For the reasons set forth above, UBS's application for section 1782 discovery satisfies all of the statutory and discretionary requirements and factors, and UBS respectfully requests that the Court grant UBS's application.

Dated:  New York, New York
       June 10, 2013

                        SPEARS & IMES LLP

                        By: *David Spears* (signature)
                        David Spears (dspears@spearsimes.com)
                        Mónica Folch (mfolch@spearsimes.com)
                        51 Madison Avenue
                        New York, NY 10010
                        Tel: (212) 213-6996
                        Fax: (212) 213-0891

                        *Attorneys for UBS AG*