# SATTERLEE STEPHENS BURKE & BURKE LLP

230 PARK AVENUE
NEW YORK, NY 10169-0079
(212) 818-9200
FAX (212) 818-9606
E-Mail: jcoster@ssbb.com
Direct Dial: (212) 404-8712

www.ssbb.com

51 JOHN F. KENNEDY PARKWAY
FIRST FLOOR WEST
SHORT HILLS, NJ 07078-2713
(973) 218-2509
FAX (973) 218-2401

May 21, 2014

BY ECF and ELECTRONIC MAIL

Hon. Paul A. Engelmayer
United States Courthouse, Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re:  In re Application of UBS AG For An Order Pursuant To 28 U.S.C. § 1782 To Conduct Discovery For Use in Foreign Proceedings, No. 13-mc-00199

Dear Judge Engelmayer:

On behalf of JPMorgan Chase Bank, N.A. ("JPMC"), we write in response to the letter sent today by UBS AG ("UBS") asserting that the deposition held today was a "failed exercise." This remarkable assertion is refuted by the clear language of the transcript – a rough draft of which was received by both UBS and JPMC at 12:22 pm today, but which UBS tellingly omitted from its submission to Your Honor. A copy of that rough transcript is enclosed for the Court's reference.

In its briefing on the motion to compel the deposition held today, UBS asserted repeatedly that it required: "information about *why JPMC did not transfer the $65 million from Kaupthing to KSF on October 14, 2008 or after, when there were sufficient funds in Kaupthing's account to cover the transfer*." UBS' Mem. of Law in Support of Motion to Compel at 7 (Apr. 18, 2014) (Dkt. 22) (emphasis added). Similarly, on May 13, 2014, this Court ordered that JPMC produce an additional witness: "who can testify as to *why a hold was placed on the account following October 14, 2008 when the account was or contained sufficient assets to accomplish the transfer*." Tr. 8:13-15 (emphasis added). In an effort to finally bring this matter to a close, JPMC made every effort to prepare its witness to comply with the Court's order. Indeed the transcript makes clear that JPMC did fully comply.

At today's deposition, Mr. Ramirez testified that in preparation he asked Mr. Guthe and Ms. Ellis "why wasn't the payment effected on the 14th when there was sufficient funds, and to Leearn's recollection, the funds weren't executed because the account was still in hold." Dep. Tr. 3:21-4:1. Asked why the hold was in place, Mr. Ramirez responded that he was told "that it was *still on hold based on the SWIFT that we received from the Icelandic Authority to put the account [on hold] – who in essence was controlling the bank at the time*."

1946690_2

SATTERLEE STEPHENS BURKE & BURKE LLP

The Honorable Paul A. Engelmayer, Page 2
May 21, 2014

Id. at 4:3-9 (emphasis added); see also id. at 7:14-16 ("It was just basically her recollection that the reason the funds did not go out was because of this hold. Q. Because of a hold that resulted from this [SWIFT message]? A. Yes."); id. at 6:13-7:4 ("Q. And whether the extent to which an order from the Icelandic Financial Services Authority influenced JPMC's decision not to transfer? A. Yes... this SWIFT is what caused JPMorgan Chase to hold from making any payments. Q. Okay. Including on October 14th or after? ... A. Yes, I would say including and after, yes."). Later, Mr. Spears asked again whether Mr. Ramirez had received any "indication from either of them as to *what about this SWIFT caused them to – caused JPMC not to make the transfer, any particular part of this SWIFT that ... caused JPMC not [to] make the transfer? ... A. Just the fact that it said to put all payments on hold.*" Id. at 7:20-8:4 (emphasis added).

Incredibly, UBS now insists that the deposition was somehow a "failed exercise" because JPMC did not specifically ask Ms. Ellis and Mr. Guthe about the use of the particular word "order" in the SWIFT message sent by Kaupthing. Setting aside the fact that the SWIFT message is a two sentence instruction that JPMC testified caused it to freeze the account, if UBS wanted specific testimony on the use of one word within that instruction it should have so informed JPMC (and the Court) prior to the deposition. Nowhere in any of the submissions made by UBS does it state that UBS requires specific testimony on the significance of the word "order" in the October 9, 2008 SWIFT message.

Mr. Ramirez clearly testified, based on his discussion with Mr. Guthe and Ms. Ellis and the documents he reviewed in connection with his prior deposition, that JPMC did not complete the transfer at issue here because a hold was in place at the direction of the Icelandic authorities then in control of Kaupthing bank. The record is clear on this point.

Respectfully submitted,

*/s/ James J. Coster*

James J. Coster

Enclosure

cc: David Spears, Peter Calamari, Damian Cavaleri (via email)

1946690_2

RAMIREZ ROUGH DRAFT.txt

 1

 1   ANDRE RAMIERZ ROUGH DRAFT
 2  The following transcript(s) of proceedings,
 3  or any portion thereof, in the above titled
 4  matter, taken on any dates, is being
 5  delivered UNEDITED and UNCERTIFIED by the
 6  official court reporter at the request of
 7  defendants' counsel.  The purchaser agrees
 8  not to disclose this uncertified and unedited
 9  transcript in any form (written or electric)
10  to anyone who has no connection to this case.
11  This is an unofficial transcript. This
12  transcript has not been checked, proofread or
13  Corrected. It is a draft transcript, NOT a
14  Certified transcript. As such, it may contain
15  Computer-generated mistranslations of
16  stenotype code or electronic transmission
17  errors, resulting in inaccurate or
18  nonsensical word combinations, or
19  untranslated stenotype symbols which cannot
20  be deciphered by non-stenotypists.
21
22
23
24
25

 2

 1   ANDRE RAMIERZ ROUGH DRAFT
 2

```
                    RAMIREZ ROUGH DRAFT.txt
 3    EXAMINATION BY
 4    MR. SPEARS:
 5        Q.     State your name for the record,
 6 please.
 7        A.     Andre Ramirez.
 8        Q.     State your business address for the
 9 record, please.
10        A.     4 Metrotech Center Brooklyn, New
11 York.
12               THE COURT REPORTER:  Counsel, will you
13               please state if you will be ordering a
14               transcript and that you are willing to pay
15               for it.
16               MR. CAVALERI:  This is Damian Cavaleri
17               representing Kaupthing Bank and yes, we
18               would like a transcript.  Regular delivery
19               right now is fine.  If we want something
20               faster, I'll get in touch with you send
21               you an e-mail.
22               MR. BUNTING:  This is Matthew Bunting
23               from Quinn Emanuel.  We don't need
24               anything beyond what Mr. Calamari has
25               already ordered.
                                                         3


 1               ANDRE RAMIERZ ROUGH DRAFT
 2               THE COURT REPORTER:  That means you're
 3               ordering?
 4               MR. CALAMARI:  Yes, this is Peter
 5               Calamari.  Quinn Emanuel  just needs one
 6               copy regular delivery.
 7               THE COURT REPORTER:  Thank you.
                           Page 2
```

RAMIREZ ROUGH DRAFT.txt

```
 8                 MR. BUNTING:  Correct.
 9        Q.       Mr. Ramirez, David Spears here.
10 Thank you for getting together with us again for
11 hopefully what will be a short second session.
12                 In connection with your preparation
13 for today's deposition, can you tell me what
14 steps you took to prepare?
15        A.       I met with Jim and Jen yesterday
16 and also I had a call with Jen, myself, Leearn
17 Ellis and Jens Guthe from our team and abroad.
18        Q.       Can you tell me what you asked,
19 what, if anything, you asked Ms. Ellis and
20 Mr. Guthe on the call?
21        A.       We asked whether or not -- we asked
22 them about the payment, why wasn't the payment
23 effected on the 14th when there was sufficient
24 funds, and to Leearn's recollection, the funds
25 weren't executed because the account was still
```

                                                    4

```
 1            ANDRE RAMIERZ ROUGH DRAFT
 2 in hold.
 3        Q.       Did she provide any information
 4 about why it was on hold?
 5        A.       Right, all she said was that it was
 6 still on hold based on the swift that we
 7 received from the Icelandic Authority to put the
 8 account -- who in essence was controlling the
 9 bank at the time.
10        Q.       I'm going to show you -- could I
11 see the exhibits?  Thank you.
```

```
                      RAMIREZ ROUGH DRAFT.txt
 12                         I'm going to show you what has been
 13 marked as Exhibit 25 for this deposition.  If it
 14 was marked as an exhibit at your earlier
 15 deposition, I note for the record that this
 16 would be its second appearance with a -- this
 17 time with a different number; it's Exhibit 25
 18 and?
 19                 MR. SPEARS:  For the benefit of
 20             counsel on the phone, it is a or appears
 21             to be a swift message from Kaupthing to
 22             JPMC dated October 9th, 2008.
 23      Q.     I'm handing that to you
 24 Mr. Ramierz.
 25             Would you look at that for a second
                                                      5


  1              ANDRE RAMIERZ ROUGH DRAFT
  2 or as long as you want to?
  3      A.     Okay.
  4      Q.     Did you have a chance to review
  5 this before or at the time when you spoke with
  6 Ms. Ellis and Mr. Guthe?
  7      A.     No.
  8      Q.     I want to just read a really short
  9 piece of this into the record and then follow-up
 10 with some questions.
 11             "By order of the Icelandic
 12 Financial Services Authority (FSA) we have been
 13 ordered to transfer all credit balance on our
 14 account held with you.  Can you please put all
 15 pending payments out of our account on hold and
 16 send all balance to," and there's further
                              Page 4
```

RAMIREZ ROUGH DRAFT.txt
17 information about where the balance should be
18 sent.
19             Do you see what I just read to you,
20 sir?
21      A.     Yes.
22      Q.     You can you tell me what, if
23 anything Ms. Ellis or Mr. Guthe said about the
24 significance of an order of the Icelandic
25 Financial Service Authority and JPMC's decision
                                                6


 1           ANDRE RAMIERZ ROUGH DRAFT
 2 not to transfer the 65 million on or after the
 3 October 14th?
 4             MR. COSTER:  Objection to form.  I
 5                think its been asked and answered but you
 6                can answer again.
 7      A.     I'm sorry.
 8      Q.     Do you want to let her read the
 9 question back or is it kind of long --
10      A.     The question was whether or not I
11 had any discussions about the disposition of the
12 funds, right?
13      Q.     And whether the extent to which the
14 role -- the extent to which an order from the
15 Icelandic Financial Services Authority
16 influenced JPMC's decision not to transfer?
17      A.     Yes.
18             MR. COSTER:  And this is the
19                October 9th?
20             THE WITNESS:  Yes, this is
                    Page 5

```
                      RAMIREZ ROUGH DRAFT.txt
 21            October 9th, so yes this is in essence the
 22            hold -- this swift is what caused JPMorgan
 23            Chase to hold from making any payments.
 24     Q.     Okay.
 25            Including on October 14th or after?
                                                         7


  1                ANDRE RAMIERZ ROUGH DRAFT
  2                 MR. COSTER:  You can answer.
  3     A.     Yes, I would say including and
  4 after, yes.
  5     Q.     Did you learn anything from Ms.
  6 Ellis or Mr. Guthe as to whether JPMC considered
  7 the mention of the Icelandic Financial Services
  8 Authority and its order to be important in their
  9 decision making?
 10                 MR. COSTER:  Objection to form, beyond
 11            the scope.  You can answer if you have
 12            that specific discussion.
 13     A.     None.  I don't think we had that
 14 specific discussion, no.  It was just basically
 15 her recollection that the reason the funds did
 16 not go out was because of this hold.
 17     Q.     Because of a hold that resulted
 18 from this?
 19     A.     Yes.
 20     Q.     And no indication from either of
 21 them as to what about this swift caused them to
 22 -- caused JPMC not to make the transfer, any
 23 particular part of this swift that us caused
 24 JPMC not the make the transfer?
 25                 MR. COSTER:  Objection to form.  You
                             Page 6
```

RAMIREZ ROUGH DRAFT.txt

8

```
 1            ANDRE RAMIERZ ROUGH DRAFT
 2            can answer.
 3     A.     Just the fact it said to put all
 4 payments on hold.
 5     Q.     And no reference in your
 6 discussions with them to the Icelandic Financial
 7 Services Authority?
 8     A.     I'm sorry, repeat that again.
 9     Q.     No mention by Mr. Guthe or Ms.
10 Ellis of the reference in the swift to the
11 Icelandic Financial Services Authority?
12     A.     No.
13     Q.     And you didn't ask -- strike that.
14            Did you ask them in your
15 conversation with him yesterday the language in
16 this swift about an order of the Icelandic
17 Financial Services Authority had significance in
18 JPMC's decision not to make the $65 million
19 transfer?
20            MR. COSTER:  Objection to form, asked
21            and answered.  He told you that this
22            e-mail was --
23            MR. SPEARS:  Okay.  Would you read my
24            question back, please?
25            (Whereupon, a portion of testimony was
```

9

```
 1            ANDRE RAMIERZ ROUGH DRAFT
 2            read back.)
```

```
                      RAMIREZ ROUGH DRAFT.txt
 3                MR. COSTER:  Objection to form.  What
 4           was significant to JPMC was beyond the
 5           scope.
 6                MR. SPEARS:  Okay.  I would like an
 7           answer.
 8                MR. COSTER:  You can answer.  I'm
 9           going to give you a leeway, you can
10           answer.
11                MR. SPEARS:  Thank you for that.
12      A.   There was no discussion about the
13 Icelandic Authority swift.  The bottom line --
14 the conversation I had was that why wasn't the
15 funds effective on the 14th when there was
16 sufficient funds and the answer I got was
17 because the hold was still in place.
18                What hold, the hold that was placed
19 by this swift that came in on the 9th of
20 October.
21      Q.   Thank you for that.
22                And let me just clarify for the
23 record:
24                In the conversation neither you or
25 counsel who were with you asked the question of
                                                    10


 1            ANDRE RAMIERZ ROUGH DRAFT
 2 Mr. Guthe or Ms. Ellis whether the language in
 3 this October 9th swift about an order of the
 4 Icelandic Financial Services Authority had
 5 significance to JPMC in deciding whether to make
 6 the transfer?
 7                MR. COSTER:  Objection to form, asked
                             Page 8
```

RAMIREZ ROUGH DRAFT.txt
8            and answered.  You can answer it again.
9       A.   No.
10      Q.   Fine, that's a yes or no question.
11      A.   No.
12      Q.   Did you have any conversations with
13 any other person in addition to the conversation
14 you had with Ms. Ellis and Mr. Guthe yesterday?
15      A.   Just with Jen --
16      Q.   Other than counsel.
17      A.   No.
18      Q.   Did you review any documents in
19 connection with your preparations for your
20 testimony today?
21      A.   No.
22      Q.   And you did not review this swift
23 that's been marked as Exhibit 25?
24      A.   In preparation for today, no.
25           MR. COSTER:  He's not talking about in
                                                11

1            ANDRE RAMIERZ ROUGH DRAFT
2            preparation for your last deposition.
3            He's talking about today's deposition.
4            THE WITNESS:  Right, the answer is no.
5       Q.   Including you did not review that
6 Exhibit 25 prior to your telephone conversation
7 with Mr. Ellis and Mr. Guthe?
8            MR. COSTER:  Objection to form.  He
9            had already reviewed in preparation for
10           his earlier depositions.  He can answer.
11           MR. SPEARS:  You know what, don't do

Page 9

```
                        RAMIREZ ROUGH DRAFT.txt
12                      that.  Okay.  Don't tell him how to answer
13                      the question.
14                          MR. COSTER:  It's a ridiculous
15                      question.  You've already asked him at an
16                      earlier deposition --
17                          MR. SPEARS:  Okay.  Calm down.
18                          MR. COSTER:  His answer was he
19                      reviewed it.
20                          MR. SPEARS:  Calm down.  Calm down.
21                      I'm asking questions to the witness, not
22                      you.
23                          MR. COSTER:  He answered that he
24                      already reviewed it.  Do you want to ask
25                      him did he review it again?
                                                         12


1                       ANDRE RAMIERZ ROUGH DRAFT
2                           MR. SPEARS:  Would you, please, read
3                       back the question I asked before
4                       Mr. Coster engaged in his extended
5                       discussion on the record.
6                           (Whereupon, a portion of the testimony
7                       was read back.)
8                           MR. COSTER:  Same objection.  You can
9                       answer.
10        A.    No.
11                          MR. SPEARS:  No further questions.
12                      Thank you, Mr. Ramirez.
13                          MR. COSTER:  Peter or any folks on the
14                      phone any questions?
15                          MR. CALAMARI:  None from me.
16                          MR. CAVALERI:  None from me.
                                 Page 10
```

RAMIREZ ROUGH DRAFT.txt
17
18
19
20
21
22
23
24
25